IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GREGORY G. BUCK, )
)
Plaintiff, )
)
) NO. 3:04-0562
) JUDGE HAYNES
)
KRAFT FOOD GLOBAL, INC., )
PENSION PLAN NO. 1 OF OSCAR )
MAYER FOOD CORPORATION, )
)
Defendant. )

## MEMORANDUM

Plaintiff, Gregory G. Buck, filed this action under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 132(a) against the Defendant Kraft Food Global, Inc., ("Kraft") his former employer. Plaintiff asserts a claim for the denial of disability benefits under the ERISA plan established and administered by the Defendant Kraft. In earlier proceedings, the Court grated Plaintiff's motion to amend his complaint to add as a party " the Pension Plan No. 1 of Oscar Mayer Food Corporation" and to limit his claim for denial of disability benefits. The parties agreed to a joint administrative record that was filed. (Docket Entry No. 34).

Before the Court are the Defendant's motion for judgment on the record or in the alternative summary judgment (Docket Entry No. 26) and the Plaintiff's motion for judgment on the administrative record or in the alternative summary judgment. (Docket Entry No. 31). The Defendant has filed responses to Plaintiff's motion and Plaintiff's Statement of Undisputed Facts. (Docket Entry Nos. 38 and 39).

In its motion, the Defendants argue, in essence: (1) that Plaintiff did not file an application for disability benefits; (2) that Plaintiff has not exhausted his administrative remedies under the Plan;

(3) that a remand to the Plan is an appropriate remedy; and (4) in the alternative, the Defendants' decision is neither arbitrary or capricious.

In his motion, Plaintiff contends, in sum: (1) that he made numerous attempts to file his disability claim with the Plan; (2) that the Defendants refused to provide any application forms for him to do so; (3) that Plaintiff has thus exhausted any administrative remedies under the Plan; (4) that in the alternative, the Defendants' conduct renders such exhaustion futile; and (5) that the <u>de novo</u> standard of judicial review is required given the Defendants' refusal to consider Plaintiff's multiple requests for disability benefits to which he is entitled to under the Plan.

## A. REVIEW OF THE RECORD[1]

In December 1971, Buck began his work as an electrician at Oscar Mayer Foods Corporation ("Oscar Mayer"). (Docket Entry No. 39, Defendant's Response to Plaintiff's Statement of Undisputed Facts). Oscar Mayer sponsored a retirement plan called the "Pension Plan No. 1 of Oscar Mayer Foods Corporation" ("the Plan") that provided several benefits, including disability benefits. Id. at ¶ 2 and Docket Entry No. 34 at pp. 1-45 and Attachment A though H. Kraft later purchased Oscar Mayer, and assumed administration of the Plan. (Docket Entry No. 34, Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶¶ 8 and 9). Kraft notes that the actual plan is "Kraft Foods Global, Inc. Retirement Plan of which the Oscar Meyer Pension Plan 1 is a part. (Docket Entry No. 27, Kraft Memorandum at p. 1 n.1).

Under the Plan, any "member of a group to whom the Plan is extended through a currently

---

[1] Although the parties seek as an alternative remedy of summary judgment, a motion for judgment is the appropriate procedural method to obtain judicial review under ERISA. <u>Wilkins v. Baptist Healthcare Sys., Inc.</u>, 150 F.3d 609, 619 (6th Cir. 1998). Aside from Buck's deposition and the Defendants' Response to Plaintiff's Statement of Undisputed Facts, other references to the Administrative Record are to the Bates stamped number.

2

effective collective bargaining agreement" is immediately eligible to participate. (Docket Entry No. 39, Defendants' Response to Plaintiff's Statement of Undisputed Facts at ¶ 3). Oscar Mayer maintained the Plan specifically for members of the United Food and Commercial Workers International Union ("UFCW"), Local 405 of which Buck was a member while employed at Oscar Mayer. Id. at ¶¶ 4 and 5.

Buck worked continuously at Oscar Mayer from December 1971 to April 1, 1995. Buck did not work 400 hours during the last month of 1971, and could not qualify for any accredited service for that year. (Docket Entry No. 34, Attachment thereto, Buck Deposition at pp. 9, 10, and 12). It is undisputed that Buck worked twenty-three (23) full calendar years from 1972 and 1994 at forty (40) hours per week. Buck worked at least 2,000 hours during each of these calendar years, even allowing for two weeks of vacation. Buck earned twenty-three (23) full years of accredited service between 1972 and 1994. Between January 1 and April 1, 1995, Buck worked three months at forty (40) hours per week and earned some 480 service hours for this time earning one-quarter (¼) of a year of accredited service. Buck had a total of twenty-three and one-quarter (23¼) years of accredited service under the Plan.

Under Article 5.5 of the Plan, "a Participant who retires on a Disability Retirement Date will be entitled to receive a monthly Disability Retirement Pension . . ." (AR at 0073). Under Article 4.3 and Article 3.6 of the Plan, to retire on a "Disability Retirement Date," a participant must complete at least five (5) years of "Vesting Service." Id. at 0070. Article 3.4(a)(I)) of the Plan provides that a participant gets one year of vesting service for each year in which he completes 1,000 or more "Hours of Service" and earns one hour of service for each hour of paid work or vacation. Id. at 0064. When a participant has the requisite number of Vesting Years, Article 4.3 directs that

3

his Disability Retirement Date shall be:

> the later of the first day of the month coincident with or next following six calendar months of Disability (as defined below) or the first day of the month next following the date on which the participant files an application[2] with the Pension Committee for a Disability Retirement Pension.

Id. at 0070. Under Article 4.3(a), a participant "shall be deemed to be suffering from a 'Disability' if he is found to meet the definition of 'disability' in the Federal Social Security Act." Id.

In the latter part of 1994, Buck injured his rotator cuff in an abortive fall from a scaffold on the job and could not perform his regular job. (Docket Entry No. 32, Buck Deposition at p. 11). Yet, after an examination by the plant doctor, Buck was allowed to report to work with the plant's maintenance crew until April 1, 1995. Id. at pp. 11-12. In the interim, Buck pursued a worker's compensation action for his on-the-job injury that was ultimately settled. (Docket Entry No. 34, Attachment thereto, Buck Deposition at pp. 14-15). Oscar Mayer laid off Buck on April 1, 1995, due to its decision to close that plant. (Docket Entry No. 34, Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶ 7).

Buck filed an application for Social Security benefits on December 27, 1996 that was approved. In awarding Buck's benefits, the Administrative Law Judge found as follows:

> The issues in this case are whether the claimant is under a disability as defined by the Social Security Act and if so, when his disability commenced, the duration of the disability, and whether the insured status requirements of the Act are met for the purpose of entitlement to a period of disability and disability insurance benefits.
>
> After consideration of the entire record, the Administrative Law Judge makes the following findings:
>
> 1.  <u>The claimant met the insured status requirements of the Act on April 1, 1995. The claimant has not performed any substantial gainful activity since</u>

---

[2] The Plan does not require an application to be in any particular form. Id. at 0070.

4

April 1, 1995.

2. The claimant's impairments which are considered to be "severe" under the Social Security Act are ankylosing spondylitis, adhesive capsulitis of the right shoulder, and obesity.

3. The claimant's impairments do not meet or equal in severity the appropriate medical findings contained in 20 CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments).

4. The claimant's allegations are found to be credible.

5. The claimant's impairments prevent him from lifting more than twenty pounds occasionally or ten pounds frequently with restricted neck movement.

6. The claimant is unable to perform his past relevant work.

7. The claimant was 53 years old on the date disability began, which is defined as closely approaching advanced age. The claimant has a high school education.

8. The claimant does not have transferable skills to perform other work within his physical and mental residual functional capacity.

9. Based upon the claimant's residual functional capacity, and vocational factors, there are no jobs existing in significant numbers which he can perform. This finding is based upon Medical-Vocational Rule 201.14, 20 CFR Part 404, Appendix 2 to Subpart P.

10. <u>The claimant has been under a disability as defined by the Social Security act and Regulations since April 1, 1995</u>.

(Docket Entry No. 32, Attachment thereto, Social Security Decision at 0019, 0020-21). (emphasis added).

After the Social Security ruling, Buck pursued benefits under the Plan initially by telephone and later in writing. (Docket Entry No. 39, Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶¶ 13 and 14). On February 19, 1997, Buck sent a letter to Kraft describing his injury and stating that "I . . . have not been able to work" since the April 1, 1995 plant closure.

5

(Docket Entry No. 34 at p. 5). In this letter, Buck inquired about his "retirement options." Id. On May 8, 1997, Kraft responded in a letter that Buck was eligible for "pension payments" and requested his "written application" for benefits, but a form was not included. Id. at 11.

Buck sent a letter by certified mail that Kraft received on May 20, 1997. This letter summarized his earlier efforts to obtain his "Retirement Benefits" and requested "any forms" necessary to obtain them. Id. at 2. Without a response, Buck hired counsel. (Docket Entry No. 32, Attachment thereto, Buck deposition at p. 24).

On August 5, 1998, Buck's counsel wrote Kraft setting forth Buck's previous attempts to obtain a "pension payments." Id. at 0033-0034. Buck's attorney also asked "If Mr. Buck is entitled to his pension at the present time, what must be done to start it? If he is not entitled to his pension, please advise in writing to me the reason(s) why he is note entitled to his pension." Id. at 0034. On August 19, 1997, Buck sent a letter to Kraft stating "I want to receive my retirement benefits now. If there are any forms that [I] need to fill out, send them to me at the address above." Id. at 0037.

On September 2, 1998, Buck's attorney wrote another letter to Kraft asking Kraft to "at least acknowledge my communications." Id. at 0032. On September 11, 1998, Martha Ochoa, Kraft's benefits administrator sent Buck and his counsel forms for a "vested deferred benefit,"[3] a nondisability pension. Id. at 0028. On March 24, 1999, Buck's attorney responded, "Mr. Buck believes that he is entitled to disability benefits under his pension plan. As a consequence, if you would send to me the necessary application, I will Buck fill it out and return it to your office

---

[3] Article 6.1-6.2 of the Plan treats a "deferred vested pension" separately from a disability pension. AR at 0077-0078 . Article 5.5 provides that a participant qualifies for a disability pension if he retires on a "Disability Retirement Date." Id. at 0073. Under Article 6.1, for a deferred vested pension, his employment must end "prior to the date on which he would first be eligible to retire on a Retirement Date." Id. at 0077.

6

immediately." Id. at 0027. Under the Plan, "[a]ny notice or document required to be filed with any Committee under the Plan will be properly filed if delivered or mailed by registered mail, postage prepaid. to such Committee in care of the Company at its principal executive offices." Id. at 60. Kraft never so informed Buck or his counsel.

In an April 22, 1999 letter, Buck's counsel repeated his request for an application for disability pension benefits. Id. at 0026. Craig Bailey, a Kraft official responded on April 29, 1999 and enclosed more forms for a, "deferred vested pension" non-disability pension. Id. at 0025. As to a disability pension Bailey stated that the requirements were "very rigorous." In addition, Bailey stated that eligibility for a disability pension required that "prior to his termination he had been disabled for at least six months and had received a Social Security disability award with an effective date during his period of employment." Id. Yet, the Plan defines disability differently:

> 4.3. Disability Retirement Date. A Participant who has completed at least 5 years of Vesting Service shall be entitled to retire on a "Disability Retirement Date" as of the later of the first day of the month coincident with or next following six calendar months of Disability (as defined below) or the first day of the month next following the date on which the Participant files an application with the Pension Committee for a Disability Retirement Pension (as described in subsection 5.5). The Disability Retirement Pension of a Participant who retires on a Disability Retirement Date shall commence as of the date that would have been his Normal Retirement Date unless the Participant, by advance written application to the Pension Committee, elects to have his Disability Retirement Pension commence earlier on the first day of any month coincident with or following the later of his Disability Retirement Date and the date as of which any sick leave benefits payable with respect to him expire.
>
>> (a) Disability. A Participant shall be deemed to be suffering from a "Disability" if he is found to meet the definition of "disability" in the Federal Social Security Act or if he has, through unavoidable cause, been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation, or employment for remuneration or profit and if, in the opinion of a qualified physician, such disability will be permanent and continuous during the remainder of his life. The total and permanent disability of a

7

Participant shall be deemed to have resulted from an unavoidable cause unless such disability was caused by or connected with (i) chronic alcoholism or addiction to narcotics, (ii) engaging in a criminal act, (iii) an effort to bring about the injury or illness of himself or any other person, or (iv) engaging in the military service of the United States. A Disability Retirement Pension shall not be granted for the purpose of providing a Participant relief from unemployment or any condition other than total and permanent disability for medical reasons.

(b) Determination of Disability. If a Participant does not meet the definition of "disability" in the Federal Social Security Act and if a difference of opinion
shall arise between the Pension Committee and the Participant as to whether the Participant is otherwise suffering from a Disability, such difference shall be
resolved as follows:

(i) The Participant shall be examined (at the Company's expense) by a physician who shall have been appointed for that purpose by the Company and (at the Participant's expense) by a physician who shall have been appointed for that purpose on behalf of the Participant.

(ii) If the two physicians shall disagree as to whether the Participant is suffering from a Disability, that question shall be submitted to a third physician who shall be selected by the two physicians.

(iii) The medical opinion of the third physician, after examination of the Participant and consultation with the two other physicians (the expense of such examination and consultation being shared equally between the Company and the Participant), shall conclusively decide whether the Participant is suffering from a Disability.

(iv) The Disability Retirement Pension shall not be paid until a final decision has been rendered as provided in this paragraph; provided, however, that if the final decision shall be that the Participant is suffering from a Disability then the Disability Retirement Pension shall be paid retroactively to his Disability Retirement Date.

\* \* \*

Pension computed as if his Disability Retirement Date had been his Early Retirement Date for purposes of determining his Monthly Benefit Unit and as if the date of

8

commencement of his Early Retirement Pension were his Early Retirement Date for purposes of determining the amount of reduction, if any, required by reason of the commencement of payment prior to his attainment of age 60.

* * *

(iv) If the Participant had neither attained age 55 years nor completed at least 30 years of Accredited Service on his Disability Retirement Date, he shall be entitled to a Deferred Vested Pension commencing as of the date set forth in subsection 6.1 and computed in accordance with subsection 6.2 based upon his Monthly Benefit Unit (as determined under subsection 5.2) on the date his employment with the Employers terminated.

Notwithstanding the foregoing provisions of this paragraph (c), a Participant's right to benefits and the amount thereof upon the cessation of his Disability Retirement Pension shall be determined in accordance with the provisions of the Plan as in effect on the Participant's Disability Retirement Date.

Id. at AR 0070-71 and 0073-75.

On September 21, 1999, in support of Buck's requests for benefits, Buck's counsel provided Kraft a copy of the Social Security Administration's decision. Id. at 0014-0024. Buck's counsel's letter stated: "Please consider this a request for a disability retirement." Id. 0014. On February 20 and March 23, 2001, Buck's attorney mailed two requests to Kraft, citing Kraft's failure to provide a reply to his previous letter. Id. 0001-2. To date, Buck has not received any formal application from Kraft for disability pension benefits. "I've wanted to fill out an application, . . . but I never could get the company to send to me one." (Docket Entry No. 32, Buck Deposition at p. 22).

## B. CONCLUSIONS OF LAW

As a threshold issue, "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal count." Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991). In McCreery v. GTE North Inc., 40 F.Supp.2d 434 (W.D. Mich. 1999), the district court described the interests served by this exhaustion

9

requirement:

> As the court noted in exhaustion may serve a variety of purposes, and, The purposes of exhausting remedies include the following: (1) to help reduce the number of frivolous lawsuits under ERISA; (2) to promote the consistent treatment of claims for benefits; (3) to provide a nonadversarial method of claims settlement; (4) to minimize the costs of claims settlement for all concerned; (5) to enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes; (6) to enhance the ability of trustees of benefit plans to correct their errors; (7) to enhance the ability of trustees of benefit plans to interpret plan provisions; (8) to help assemble a factual record which will assist a court in reviewing the fiduciaries' actions.

Id. at 440. Yet, that Court noted, where "the purposes of exhaustion would not be furthered, there would be no sense in exhausting administrative remedies." Id. at 975. (quoting Costantino v. TRW, Inc., 13 F.3d 969, 975 (6th Cir. 1994).

"A court is obligated to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 418 (6th Cir. 1998). An ERISA administrator's failure to provide an application requested by a participant excuses any non-exhaustion. Newman-Waters v. Blue Cross/Blue Shield of Tennl, Inc., 2005WL1263026 at *5 (E.D. Tenn. May 27, 2005) (citing Swaback v. American Info. Techs Corp., 103 F.3d 535, 542 (7th Cir. 1996) ("a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract"). Yet, an ERISA administrator's failure to do so does not automatically entitle the participant to an award of benefits. Id. at 22 (citing Hackett v. Xerox Corp, Long-Term Income Disability Plan, 315 F.3d 771, 776 (7th Cir. 2003).

The Secretary of Labor has defined the minimum requirements for employee benefits claims procedures requiring reasonable procedures for filing claims notification of decisions, and appeals.

10

29 C.F.R. § 2560.503-1(a) and (b). Reasonable claim procedures are procedures that "do not contain any provision, and are not administered in any way, that unduly inhibits or hampers the initiation or processing of claims for benefits." 29 C.F.R. § 2560.503-1(b)(3). Here, the Plan requires that the Committee "to establish a claims procedure in accordance with section 503 of ERISA". (Docket Entry No. 32 at 0098). The Plan does not require an application to be in any particular form. Id. at 0070. Under the Plan, "[a]ny notice or document required to be filed with any Committee under the Plan will be properly filed if delivered or mailed by registered mail, postage prepaid. to such Committee in care of the Company at its principal executive offices." Id. at 60.

Under these ERISA regulations, "[f]or purposes of this section, a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." 29 C.F.R. § 2560.503-1(e). The plan administrative must notify a claimant of an adverse benefit determination within ninety (90) days of receipt of the application claim, 29 C.F.R. § 2560.503-1(f)(1), "without regard to whether all the information necessary to make a benefit determination accompanies the filing." 29 C.F.R. § 2560.503-1(f)(4).

Upon an administrator's failure to comply with these regulations, the ERISA regulations provide that the "claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." Id. § 2560/503-1(1).

On March 24, 1999, Buck's attorney wrote, "Mr. Buck believes that he is entitled to disability benefits under his pension plan." AR at 0027. Buck's counsel also asked for a copy of the "necessary application." Id. On April 29, 1999, Mr. Bailey sent forms for a non-disability

11

pension, but noted that "[t]he requirements for a disability pension are very rigorous." Id. Buck has never received a formal application for a disability pension. Id., Buck Deposition at p. 22.

Given the ERISA regulations definition of "claim" as any request for benefits made in accordance with reasonable procedures, 29 C.F.R. § 2560-503-1(e), the Court concludes that Buck's three (3) letters stating he was unable to work and requesting "retirement' and disability benefits" qualify as clams for benefits under ERISA. In addition, Buck's lawyer's several letters to Kraft requesting disability benefit also constitute an application or claim for benefits. To the extent that the defendants have a formal application process, this requirement was not disclosed in Kraft's letters.

Under ERISA regulations, Kraft had ninety (90) days from receipt of his letters to notify Buck of an adverse determination. 29 C.F.R. §2560.503-1(f)(1). The record does not contain any denial letter. Under ERISA regulations a denial letter must give specific reasons for the adverse decision. 29 U.S.C. § 1133(a); 29 C.F.R. §2560-503-1(g)(i) and identify the plan provisions supporting a denial as well as the reasons for the denial. Id. The Court concludes that Buck exhausted his administrative remedies and may maintain this action. Russell, 473 U.S. at 144; 29 C.F.R. §2560.503-1(1);.

For the determination of the governing standard of judicial review, the issue is whether the plan at issue grants the administrator the discretion to determine eligibility for benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Miller v. Metro Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991). If the ERISA plan expressly grants the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then the arbitrary and capricious standard of judicial review applies. Firestone, 489 U.S. at 115; Yeager v Reliance

12

Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996). In summary, under the arbitrary and capricious standard, the Court must decide if the decision were made in good faith, is not contrary to the facts and law, i.e., whether the Administrator's decision is "rational in light of the plan's provisions." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988).

Absent such language in the plan, the de novo standard of review applies. Firestone, 489 U.S. at 115. Under the de novo standard, the district court is "to determine whether the administrator or fiduciary made a correct decision," Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990), without deference to the fiduciary's determination of benefits nor presumption as to the correctness of the fiduciary's decision. Id.

Under the Defendants' Plan, the Pension Committee is established and granted the authority "to determine conclusively all questions arising under the Plan, including the right to determine the eligibility of employees and the rights of participants... to benefits under the Plan. (Docket Entry No. 32, AR at 40). Yet, as to disability pension, a "[p]articipant shall be deemed to be suffering from a disability if he is found to meet the definition of disability in the Federal Social Security Act." Id.

Given that the Plan grants the Defendants' full discretion on disability determinations under the Plan here, the Court would apply the arbitrary and capricious standard of judicial review.

Yet, the de novo standard of review applies where ERISA administrator refused to exercise its fiduciary discretion on Buck's request and claim for benefits. "If in fact a plan administrator never offers an interpretation of plan language, then there is nothing to which the court can defer." Thompson v. J.C. Penney Co., 2001 U.S. App. LEXIS 18129 at **10-12 (6th Cir. 2000). "A majority of circuits have held that, absent substantial compliance with the deadlines, de novo review applies on the grounds that inaction is not a valid exercise of discretion and leaves the court without

13

any decision or application of expertise to which to defer." Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98, 109 (2d Cir. 2005) (adopting majority view). In the Sixth Circuit, "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner." University Hosps. v. Emerson Elec. Co., 202 F.3d 839, 846 n.3 (6th Cir. 2004). Here, the Defendants did not exercise their discretion and ignored Buck's applications for disability benefits for years. The Court, therefore, applies the de novo standard

. "When applying the de novo standard of review, a court must interpret the terms of the plan 'without deferring to either party's interpretation.'" Lake v. Metropolitan Life Ins. Co., 73 F.3d 1372, 1377 (6th Cir. 1996) (quoting Bruch, 489 U.S. at 112)). In other words, the Court should give a "fresh look" at the record. Wilkins v. Baptist Healthcare Sys., 150 F.3d 609, 616 (6th Cir. 1998).

As to whether a conflict of interest exists here, "[a] conflict of interest exists when the insurance decides whether the employee is eligible for benefits and pays those benefits." Evans v. Unumprovident Corp., 434 F.3d 866, 876 (6th Cir. 2006). In Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514 (6th Cir. 1998), the Sixth Circuit defined this conflict for ERISA purposes.

> "[T]here is an actual, readily apparent conflict . . . ., not a mere potential for one" where a company both funds and administers an LTD policy, because "it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits." . . . [B]ecause [the] defendant maintains such a dual role, "the potential for self-interested decision-making is evident."

Id. at 521.

Yet, if a fiduciary has a conflict of interest in benefit determinations, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187, Comment d (1959). Less deference may be

14

given upon proof that the denial was motivated by self-interest or bad faith. See Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir. 1998). Here, as Oscar Mayer's successor, Kraft would decide to award benefits and pay benefits. The Court will consider Kraft's conflict of interest in its decision.

The administrator's decision must be "based on a reasonable interpretation of the plan," and it must be "possible to offer a reasoned explanation, based on the evidence, for a particular outcome." Evans, 434 F.3d at 876 (quoting McDonald v. Western Southern Life Ins., 347 F.3d 161, 172 (6th Cir. 2003). The administrator's decision "will be upheld 'if it is the result of a deliberate reasoned process and if it is supported by substantial evidence." Evans, 434 F.3d at 876 (quoting Perry v. United Food & Commercial Workers Dist. Unions, 405 & 442, 64 F.3d 238, 241 (6th Cir. 1995)). This judicial review "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issue." Evans, 434 F.3d at 876 (quoting McDonald, 347 F.3d at 172). As a general rule, the administrator's written decision and the information in the administrative record are the bases for judicial review. Peruzzi, 137 F. 3d at 433-34.

In an ERISA benefits case, the court typically limits itself to the evidence available to the administrator at the time of its decision. Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 6th Cir. 1991). However, if the administrator did not make a full and fair review of the claim, the court must "reconsider the [plaintiff's eligibility] after plaintiff has been given the opportunity to submit additional evidence." See Banderklok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 617 (6th Cir. 1992) (failure to send timely written notice with specific reasons for denial), cited by Wilkins, 150 F.3d at 618 (Gilman, J., Concurring).

Buck qualified to retire on a disability retirement date, because he worked continuously at

15

Oscar Mayer from December 1971 to April 1, 1995. (Docket Entry No. 32 Buck Deposition at pp. 9, 10 and 12). Buck's service at Oscar Mayer will exceed five (5) years of Vesting Service by the time he retired. Under the terms of the Plan, Buck's disability retirement date was October 1, 1995. The Social Security Administration deemed Buck disabled as of April 1, 1995. It is undisputed that Buck's monthly benefit is $406.88 and 132 months have elapsed since Buck's disability retirement date of October 1, 1995. This yields a total of $53,708.16 in unpaid benefits that the Court will award. For the foregoing reasons, the Court grant Buck's motion for judgment on the administrative record or, in the alternative and will award disability benefits in the amounts stated above.

The next issue is an award of prejudgment interest. The district court possesses the discretion to grant prejudgment interest on an ERISA award as a matter of equity. Ford v. Uniroyal Pension Plan, 154 F.3d 613, 616 (6th Cir. 1998). Given the Defendants' failure to articulate a reason for its denials, the need to make Plaintiff whole and to avoid any financial incentive to withhold benefits wrongfully, the Court concludes that equity requires an award of prejudgment interest to give Plaintiff the full value of his benefits for which he paid. The rate of prejudgment interest will be determined under Tennessee law unless the Defendants can demonstrate that this state law overcompensates Plaintiff. Ford, 154 F.3d at 619

As to whether to award attorney fees, in Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust, 203 F.3d 926 (6th Cir. 2000), the Sixth Circuit listed the factors to be considered:

> Under 29 U.S.C. § 1132(g)(1) a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." A district court must consider the following factors in deciding whether to award attorney fees, (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a

16

common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. Schwartz v. Gregori, F.3d 1116, 1119 (6th Cir. 1998) (quoting Secretary of Dep't of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985)), cert. denied, 526 U.S. 1112, 119 S.Ct. 1756, 143 L.Ed.2d 788 (1999).

Id. at 936.

As applied here, the Court finds that the Defendants' culpability is high and the defendants can afford an award of fees. A fee award serves as a deterrent to conclusory statements that are devoid of specific and fact-supported reasons for denial of benefits. An award of attorney fees would benefit other similarly situated employees whose benefits were denied without a reasoned basis for the denial. Finally, as reflected in the Court's conclusions, Plaintiff has a much stronger position in the merits. Thus, the Court awards Plaintiff his attorney fees and costs that will be determined in accordance with federal law and Local Rules.

An appropriate Order is filed herewith.

Entered this the _____ of February, 2007.

WILLIAM J. HAYNES, JR.
United States District Judge

17